## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## MANLEY TRUCK LINE, INC., Respondent.

No. 84–2567.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1985.
Decided Dec. 27, 1985.

John Rubin, N.L.R.B., Washington, D.C., for petitioner.

Raymond F. Beagle, Mary M. Cracraft, Rik N. Siro, Gage & Tucker, Kansas City, Mo., for respondent.

Before ESCHBACH and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

The primary question presented by this petition for the enforcement of an order of the National Labor Relations Board ("the Board") is whether economic necessity may justify the implementation of a mandatory wage-deferral program that unilaterally modifies an existing collective bargaining agreement in violation of § 8(d) of the National Labor Management Relations Act ("the Act") (codified as amended at 29 U.S.C. §§ 141–87). For the reasons stated below, we will grant the Board's petition and enforce its order.

## I

The facts in this case are undisputed. Respondent, Manley Truck Line, Inc. ("Manley") is an interstate common carrier with terminals located primarily in the Midwest. In 1981, Manley acquired the Chicago/Kansas City Freight Lines, Inc., and in 1982, entered into a collective bargaining agreement with the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) ("the Union").

Owing to a generally depressed national economy, an energy crisis, and the deregulation of the trucking industry, Manley began experiencing financial difficulties in 1982. Continued operating losses and the failure of cost-saving measures to bolster its flagging revenues caused Manley to exhaust its line of credit with the Mercantile Bank and Trust Company of Kansas City by the first half of 1982. In January of 1983, the bank threatened to call Manley's outstanding loans should Manley fail to show a profit in 1983.

In May of 1982, Manley met with the Union and proposed a 12% mandatory wage deferral. The Union rejected the proposal, but did agree that Manley could approach union members individually and ask them to participate in the deferral program. Manley subsequently implemented the deferral, but only as to the voluntary participants. That deferral program is not at issue here.

In February of 1983, Manley met with the Union and proposed a 15% wage deferral. The Union rejected the proposal, but again agreed that Manley could approach union members individually about the proposal. Although Manley failed to persuade some union members to agree to the 15% deferral, it unilaterally implemented the deferral as to *all* members on March 4, 1983. On July 1, 1983, Manley revised the deferral from 15% to 10% and implemented it over the Union's objections and without the approval of some union members.[1]

---

1. Both deferral programs provided that with-    held wages would not be repaid unless Manley

On June 13, 1983, the Union filed an unfair labor practice charge against Manley with the Board. The Union alleged that Manley's implementation of the 15% wage deferral violated § 8(d), codified as amended at 29 U.S.C. § 158(d),[2] and § 8(a)(1) and (5) of the Act, codified as amended at 29 U.S.C. § 158(a)(1) and (5).[3] On July 19, 1983, the Union amended its complaint to include the 10% deferral. On December 14, 1983, a formal hearing was held before an Administrative Law Judge ("ALJ"). In his decision on February 9, 1984, the ALJ found that, by withholding a portion of wages due under the collective bargaining agreement from non-consenting employees, Manley unilaterally modified the agreement with the Union in violation of section 8(d), and thereby violated sections 8(a)(1) and (5). The Board affirmed the ALJ's decision on July 31, 1984, and ordered Manley to cease and desist implementation of the wage deferral and to reimburse employees for any wages withheld without their consent.[4] On September 14, 1984, the Board petitioned this court for enforcement of its order.

## II

Under section 8(a)(5), an employer's refusal to "bargain collectively with the representatives of his employees" constitutes an unfair labor practice. Pursuant to section 8(d), an employer's duty to engage in collective bargaining prohibits him from unilaterally terminating or modifying a collective bargaining agreement during its effective term. *See First National Maintenance Corp. v. N.L.R.B.*, 452 U.S. 666, 675, 101 S.Ct. 2573, 2579, 69 L.Ed.2d 318 (1981); *Chemical Workers v. Pittsburgh Plate*

---

reached a designated level of profitability. Additionally, the 10% deferral provided that no interest would be paid on the withheld wages.

**2.** 29 U.S.C. § 158(d) provides in pertinent part:

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and to confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modification;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided that no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later.

**3.** 29 U.S.C. § 158(a)(1) and (5) provide in pertinent part:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in ... this title;

. . . .

(5) to refuse to bargain collectively with the representatives of his employees....

**4.** The Board also found that Manley violated section 8(a)(1) of the Act by (1) threatening to close its Chicago terminal if union members did not consent to the wage deferrals, and (2) by threatening to discharge a union member who had cooperated in a Board investigation. Manley does not contest these findings in its briefs on appeal, and accordingly, we hold that the Board is entitled to enforcement of that portion of its order relating to those findings. *Dreis & Krump Mfg. Co. v. N.L.R.B.*, 544 F.2d 320, 325 (7th Cir.1976); *N.L.R.B. v. Colonial Haven Nursing Home, Inc.*, 542 F.2d 691, 699 (7th Cir.1976).

*Glass Co.*, 404 U.S. 157, 186, 92 S.Ct. 383, 401, 30 L.Ed.2d 341 (1971); *N.L.R.B. v. Lion Oil Co.*, 352 U.S. 282, 285, 77 S.Ct. 330, 332, 1 L.Ed.2d 331 (1957); *Chicago Magnesium Castings Co. v. N.L.R.B.*, 612 F.2d 1028, 1034 (7th Cir.1980). A violation of section 8(d) constitutes an unfair labor practice under section 8(a)(5). *Chemical Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. at 160, 92 S.Ct. at 387; *N.L.R.B. v. Katz*, 369 U.S. 736, 739, 82 S.Ct. 1107, 1109, 8 L.Ed.2d 230 (1962); *Chicago Magnesium Castings Co. v. N.L.R.B.*, 612 F.2d at 1034.

Manley concedes that section 8(d) prohibits mid-term contract modifications. Manley claims, however, that the mandatory wage-deferral programs were the most reasonable and equitable means of cost reduction remaining available to it, and were instituted to avoid bankruptcy, plant closure, and the loss of jobs. Manley argues that the Board's failure to allow an exception to section 8(d) in the circumstances of this case on the ground of compelling economic necessity contravenes the "public policy objectives" of the Act and runs counter to its intent and purpose. In effect, Manley is asking us to carve out an "economic necessity" exception to the section 8(a) prohibition against unilateral modifications of an existing collective bargaining agreement. We disagree with Manley's analysis and conclusions.

Our review of a decision of the Board is narrow. We must accept the Board's factual findings as conclusive, if they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *International Union, UAW v. N.L.R.B.*, 732 F.2d 573 (7th Cir.1984). If an analysis of those facts implicates the agency's expertise, we "recognize the Board's special function of applying the general provisions of the Act to the complexities of industrial life." *N.L.R.B. v. Erie Register Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963); *see also International Union, UAW*, 732 F.2d at 577. Finally, we must accord considerable deference to the Board's interpretation of the Act. *See,* *e.g., N.L.R.B. v. International Association of Iron Workers*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978); *N.L.R.B. v. Weingarten, Inc.*, 420 U.S. 251, 267, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975). If the Board's interpretation is reasonable, it will be accepted. *N.L.R.B. v. City Disposal Systems, Inc.*, 465 U.S. 822, 104 S.Ct. 1505, 1516, 79 L.Ed.2d 839 (1984); *International Union, UAW*, 732 F.2d at 577.

### A. Substantial Evidence

■ As noted above, the material facts underlying the Union's unfair labor practice charge are undisputed. The ALJ found that the wage-deferral programs constituted a mid-term contract modification. The record supports this finding. Section 8 of the collective bargaining agreement provided that "[a]ll Employees covered by this Agreement shall be paid in full each week." As a result of the wage deferrals, Manley necessarily failed to comply with that provision. The ALJ also found that the wage deferrals were unilaterally instituted over the Union's objections and against the will of some of its members. It is clear from the record that the Union had rejected both of Manley's wage-deferral proposals, and that some employees refused to participate voluntarily in the programs when asked by Manley.

On the basis of these findings, the ALJ concluded that Manley's actions violated section 8(d) of the Act. Manley so much as concedes the violation. In its reply brief, Manley states that the "central issue before this court is whether equity and the policy objectives of the ... [Act] require the recognition of a limited exception to the general prohibition against implementation of wage deferral programs." It is clear, then, that the ALJ's determination and the Board's agreement that the wage-deferral programs violated section 8(d), are supported by substantial evidence on the record as a whole.

### B. Statutory Authority

■ The only question remaining for us to consider is whether the Board's refusal to excuse Manley's violation of section 8(d) on the basis of an equitable doctrine of

compelling economic necessity constituted an unreasonable interpretation of the Act. *City Disposal Systems, Inc.*, 465 U.S. at 840–42, 104 S.Ct. at 1516; *International Union, UAW*, 732 F.2d at 577. If it is, the Board has exceeded its statutory authority, and its ruling must be set aside. *Chemical Manufacturers Association v. Natural Resources Defense Council*, — U.S. —, —, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985). We note that the construction an agency gives its authorizing statute need not be the *only* permissible one before we will sustain it, *Chemical Manufacturers Association*, — U.S. at —, 105 S.Ct. at 1108; it must be merely a permissible construction. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Peabody Coal Co. v. Director*, 778 F.2d 358, 361 (7th Cir.1985). Only if Congress has expressed an intent clearly contrary to the agency's interpretation will we intervene and reject that interpretation. *Chemical Manufacturers Association*, — U.S. at —, 105 S.Ct. at 1108; *S.E.C. v. Sloan*, 436 U.S. 103, 117–18, 98 S.Ct. 1702, 1711–12, 56 L.Ed.2d 148 (1978).

Section 8(d) provides "that where there is in effect a collective-bargaining contract ... the duty to bargain collectively shall also mean that no party to such contract shall ... modify [it]." [5] The party desiring to modify an effective agreement must continue all the terms of the contract in effect "for a period of sixty days after [notice to the Federal Mediation and Conciliation Service] is given or until the expiration date of such contract, whichever occurs later." 29 U.S.C. § 158(d)(4). The Board, relying upon its decisions in *Airport Limousine Service*, 231 N.L.R.B. 932 (1977) and *N.L.R.B. v. Oak Cliff-Golman Baking Co.*, 505 F.2d 1302 (5th Cir.1974), *cert. denied*, 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975), determined that the language of section 8(d) did not authorize it to excuse a violation of section 8(d) on a showing of economic need.[6]

The language of section 8(d) neither expressly conditions its enforcement upon the continuing economic survival of the employer's business, nor invites such a condition.[7] Congress sought with section 8(d) to provide for the modification of collective-bargaining agreements without interrupting the flow of commerce, *Mastro Plastics Corp. v. N.L.R.B.*, 350 U.S. 270, 284, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956), and to facilitate agreement as to modifications without recourse by the parties involved to economic warfare, *Chemical Workers v.*

---

5. Section 8(d) sets forth certain procedural requirements that must be met before an existing collective-bargaining agreement can be modified or terminated. *See supra* note 1. Manley did not meet these requirements.

6. Because we find that the NLRB's interpretation of section 8(d) is a reasonable and permissible one, we express no opinion as to whether the language of that section discloses an intention on the part of Congress to preclude the NLRB from adopting an economic necessity exception should it decide to do so. So long as the NLRB's interpretation is a permissible construction of section 8(d), we need not decide whether the opposite result is impermissible. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, —, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

7. Congress's response to the Supreme Court's recent decision in *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), is instructive on this point. The Court in *Bildisco* held that a debtor-in-possession that unilaterally modifies provisions of a collective-bargaining agreement during bankruptcy proceedings prior to obtaining court approval to do so does not commit an unfair labor practice under section 8(d) of the Act. In response, Congress enacted 11 U.S.C. § 1113, which forbids unilateral modifications prior to a court hearing and ruling upon an application to modify a collective-bargaining agreement. Section 1113 sets forth exhaustive procedural requirements to insure that the interests of the union are represented and protected before any action is taken to modify the rights of its members under the collective-bargaining agreement. Congress's response suggests the inference that it disfavors unilateral mid-term modifications by an employer absent the economic hardship which warrants a filing for bankruptcy, and then, only under the meticulous procedural safeguards provided by § 1113.

We also note that through § 1113 Congress has provided an economically distressed employer an avenue for relief from excessive burdens under a collective-bargaining agreement. Substantially similar relief was available to Manley under 11 U.S.C. § 365(a), the predecessor to § 1113.

*Pittsburgh Plate Glass Co.,* 404 U.S. at 1897, 92 S.Ct. at 402. The Board has chosen not to create an exception to section 8(d) for economic necessity. The Board's decision stems from its special understanding of the Act and of the complexities of industrial relations and, hence, warrants our deference. *N.L.R.B. v. Erie Resistor Corp.,* 373 U.S. at 236, 83 S.Ct. at 1150; *N.L.R.B. v. United Steelworkers,* 357 U.S. 357, 362–63, 78 S.Ct. 1268, 1271–72, 2 L.Ed.2d 1383 (1963). In refusing to recognize Manley's defense of economic necessity, the Board acted within its statutory authority.[8]

### III

For the reasons stated above, the Board's petition for enforcement is

GRANTED.

---

**8.** We find unconvincing Manley's argument that the Board's position contravenes the intent and purpose of the Act. Manley cites one case, for example, in which the Board allowed an employer to raise a defense of economic necessity against a charged violation of section 8(d). *New York Mirror Division, Hearst Corp.,* 151 N.L.R.B. 834 (1965). Yet, that case involved the employer's sale of an entire facility. Such an action is not mandatorily negotiable under § 8(d). The fact that the Board has recognized an economic necessity defense in such circum-

stances in no way precludes the Board from rejecting it in the context of the instant case. The Supreme Court too has allowed an employer to assert an economic necessity defense in regard to matters of permissive bargaining in the context of a partial plant closure, but in so doing the Court expressly distinguished that issue from matters of mandatory bargaining such as the wage rates involved here. *First National Maintenance Corp. v. N.L.R.B.,* 452 U.S. 666, 675, 101 S.Ct. 2573, 2579, 69 L.Ed.2d 318 (1981).